UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:23-CV-00078-DLB-EBA

ALLEN WILEY, III,,                                                                                                  PLAINTIFF,

V.                          **REPORT AND RECOMMENDATION**

DAVID GREEN, *et al.*,                                                                                        DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants Tyler Bailey, Nicholas Cleverger, Zach Curry, Warden David Green, and Dwayne Skaggs' Motion for Summary Judgment. [R. 47]. Plaintiff Allen Wiley, III filed a response *pro se*, [R. 50], and the Defendants filed a reply, [R. 52]. For the reasons that follow, the undersigned will RECOMMEND that the Court GRANT Defendants' Motion for Summary Judgment.

**I.**

On July 17, 2023, Wiley filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that Defendants, in their individual capacities, violated Wiley's Eighth Amendment right to be free from cruel and unusual punishment when Defendants used excessive force against him. [R. 1 at pg. 5]. Wiley is currently housed at Eastern Kentucky Correctional Center (EKCC). Defendants Bailey, Clevenger, Curry, and Skaggs were all correctional officers at EKCC at the time of the alleged incident, while Green was the warden of EKCC.

According to Wiley, on June 15, 2023, he was standing inside of the basement of Eastern Kentucky Correctional Center, waiting to receive his medication during "pill call." [R. 1 at pg. 4]. Officer Cortney Barker asked Bailey to retrieve Wiley "after multiple attempts to have [him] step

back into phase one pill call area." [R. 1-1 at pg. 9]. Wiley states that "the yard officers and staff" instructed him to wait in the basement, not in the "Phase 1 Pill Call Area." [*Id.*]. Wiley went to the basement door and Wiley gave Bailey his ID upon request. [*Id.*]. When Wiley asked for his ID back, Barker said that he would not give it back and that he was writing Wiley up. [*Id.*]. At this time, Wiley made threatening statements to Barker as detailed in the Disciplinary Report Form provided by Wiley. [R. 1-1 at pg. 9].

Wiley states that he then threw his "pills in the air to let off some steam." [*Id.*]. At that point, Clevenger approached Wiley and Wiley walked away. [*Id.*]. According to Defendants, Clevenger drew his Oleoresin Capsicum (OC) spray and ordered Wiley to turn around and "cuff up," meaning allow himself to be placed into mechanical wrist restraints. [R. 47-1 at pg. 3]. When Wiley refused and continued to walk away, Clevenger sprayed Wiley in the eyes and face with OC spray. [*Id.;* R. 1 at pg. 4]. According to Defendants, the OC spray was insufficient to gain Wiley's compliance. [R. 47-1 at pg. 3].

By the time Clevenger deployed the OC spray, he was joined by Bailey, Curry, Tharp, and Skaggs. [R. 47-1 at pg. 3]. Clevenger and Bailey both ordered Wiley to stop, and when he continued to refuse, Clevenger ordered Bailey to deploy his taser. [*Id.*]. Bailey struck Wiley in the middle of his back with his taser causing Wiley to fall to the ground. [*Id.*; R. 1 at pg. 4]. While on the ground, Skaggs and Curry restrained Wiley. [*Id.*]. Wiley was held prone on the ground for a brief period while Nurse Dianna Cade removed the taser probes from Wiley's back. [R. 47-1 at pg. 4]. Wiley was then escorted to a "holding cage in the property room where he was decontaminated and assessed." [*Id.*]. Later, Wiley received discipline for eluding or arresting apprehension. [R. 1-1 at pg. 7].

On July 17, 2023, Wiley filed a *pro se* civil complaint against Defendants Clevenger, Bailey, Skaggs, Curry, and Warden David Green all in their individual capacities pursuant to 42 U.S.C. § 1983. [R. 1]. Wiley asserts that, during the incidents above, Defendants used excessive force against him in violation of the Eighth Amendment. [R. 1 at pg. 5]. As relief, Wiley seeks money damages in the amount of $50,000, unspecified injunctive relief, and punitive damages in the amount of $50,000. [R. 1 at pg. 6].

Now, this matter is before the Court on Defendants' motion for summary judgment. [R. 47]. Defendants argue that: (1) Wiley's excessive force claims against Clevenger and Bailey each fail as a matter of law because they do not satisfy either the objective or subjective component of the excessive force analysis, or in the alterative, Clevenger and Bailey are entitled to qualified immunity; (2) Wiley's excessive force claims against Skaggs and Curry fail as a matter of law because placing an inmate in restraints and holding him on the ground for approximately one minute is a *de minimis* use of force that is not within the scope of the Eighth Amendment, or in the alternative, Skaggs and Curry are entitled to qualified immunity; and (3) Wiley's claim that Green violated his rights under the Eighth Amendment fails as a matter of law because he does not assert that Green was personally involved in the incident. In response, Wiley asks the Court to deny Defendants' motion and "move forward to trial since he has been denied the tools of discovery." [R. 50 at pg. 2].

## II.

Entry of summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At summary judgment, the moving party has the initial burden to demonstrate the absence of genuine dispute as to any material fact. *Lindsay*

*v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). A disputed issue is "genuine" only if a sufficient evidentiary basis exists on which a reasonable jury could find for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radop Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must provide evidence beyond the pleadings and provide probative evidence to support its claims. *Celotex*, 477 U.S. at 324. "When ruling on a motion for summary judgment, a court must consider the evidence 'in the light most favorable to the party opposing the motion." *Risher v. Lappin*, 639 F.3d 236, 239 (6th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986)).

### III.    Eighth Amendment Excessive Force Claims

In a prison setting, the "unnecessary and wanton infliction of pain" violates the Eighth Amendment's prohibition on cruel and unusual punishments. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977). The use of excessive physical force against an inmate constitutes the unnecessary and wanton infliction of pain, even if the inmate does not suffer "serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 24 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). The "core judicial inquiry" into a claim of excessive force seeks to determine "whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

To establish an Eighth Amendment cruel and unusual punishment claim, the plaintiff must establish both the objective and subjective components. Objectively, "harm to a prisoner must rise

to a sufficiently serious level because the Eighth Amendment prohibits only 'cruel and unusual' deprivations, not just uncomfortable or 'even harsh' ones. *Johnson v. Sootsman,* 79 F.4th 608, 615 (citing *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). Subjectively, "harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that inflicts punishment, not accidental conduct that causes injury." *Id.* (citing *Phillips v. Tangilag,* 14 F.4th 524, 535 (6th Cir. 2021); *Wilson v. Seiter,* 501 U.S. 294, 300 (1991)). To decide whether a jury could find that an officer acted maliciously, there are several factors to consider: (1) the extent of the person's injury; (2) the nature of the threat that justified the force; (3) whether the amount of force was proportional to the threat; and (4) whether the officer took any actions designed to reduce the required amount of force. *Id.* at 618; *see Caldwell v. Moore,* 968 F.2d 595, 600 (6th Cir. 1992).

### A. Clevenger

Wiley claims that Clevenger used excessive force when he sprayed Wiley with OC spray. [R. 1 at pg. 4]. Here, even when viewed in the light most favorable to Wiley, the facts indicate that Clevenger used a chemical agent on Wiley in a "good faith effort to maintain or restore discipline." *Jennings v. Peiffer,* 110 Fed. Appx. 643, 645 (6th Cir. 2004) (citing *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). In *Jennings,* the Sixth Circuit held that a Corrections Officers' use of a chemical agent was in good faith to maintain discipline where the inmate refused to obey an order to back up to the cell door and refused to remove his shoes. *Id.* at 645. According to the Court, while the inmate ultimately may have attempted to obey the order, an officer is not required to wait and see if the inmate would have a change of heart. *Id.* at 645.

Similarly, here, Clevenger had a plausible basis to believe that Wiley constituted a threat who needed to be restrained under the circumstances. Prior to spraying Wiley, Clevenger knew

the following information: (1) Wiley threw his medication into the air and onto the prison yard; (2) Clevenger attempted to stop Wiley, but Wiley turned and walked away; (3) Wiley began cursing at Clevenger; (4) Clevenger and Skaggs gave Wiley multiple orders to turn around and cuff up; and (6) Wiley continued to curse at staff. [R. 1-1 at pg. 3]. Wiley reports that he threw his pills in the air "to let off some steam," Clevenger yelled at Wiley in response to his act, and Wiley walked away from Clevenger upon orders to stop and "cuff up." [R. 1 at pg. 4]. "When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force." *Id.* (citing *Caldwell v. Moore,* 968 F.2d 595, 602 (6th Cir. 1992). Because Wiley's act of defiance was not a singular occurrence, and Wiley has not provided any evidence showing that Clevenger maliciously intended to cause Wiley harm, Wiley's claim against Clevenger must fail.

Further, Clevenger repeated his orders to Wiley to stop walking away from him multiple times to reduce the required amount of force, and when he did use the OC spray, he used one short burst to gain Wiley's compliance. [R. 1-1 at pg. 1]. The Disciplinary Report Form, provided by Wiley, states that prior to spraying, the OC scan weighed 4.5oz and afterward weighed 3.5oz. [*Id.*]. Wiley does not allege that he suffered an injury after being sprayed. While the nature and the extent of the injuries sustained by a prisoner are relevant, they are not dispositive. *Wilkins*, 559 U.S. at 37-38. The Sixth Circuit has denied prisoner's Eighth Amendment claims when an officer's use of force caused the prisoner to suffer "only some tenderness, bruising, and slight swelling," or "minor lacerations and cuts." *Johnson,* 79 F.4th at 619 (citing *Bullocks v. Hale,* 2021 WL 1578198, at *2 (6th Cir. Mar. 1, 2021); *Lockett v. Suardini,* 526 F.3d 866, 876 (6th Cir. 2008)). Therefore,

because the facts, when analyzed in Wiley's favor, do not show that Clevenger acted maliciously to cause Wiley harm, his Eighth Amendment claim against Clevenger must fail.

## B. Bailey, Skaggs, Curry

Wiley claims that Bailey used excessive force in violation of the Eighth Amendment when he struck Wiley in the middle of his back with a taser causing Wiley to fall to the ground. [R. 1 at pg. 4]. Wiley also claims that Skaggs and Curry used excessive force in violation of the Eighth Amendment when they restrained him on the ground "with no nurse on the scene to see if [Wiley] had injuries." [R. 1 at pg. 4]. Here, like the discussion above, even when viewed in the light most favorable to Wiley, the facts indicate that Bailey used the taser and Skaggs and Curry restrained Wiley on the ground in a "good faith effort to maintain or restore discipline." *Jennings v. Peiffer,* 110 Fed. Appx. 643, 645 (6th Cir. 2004) (citing *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)).

At the time Bailey struck Wiley with the taser and Skaggs and Curry restrained Wiley, Defendants knew the following information: (1) Wiley threw his medication into the air and onto the prison yard; (2) Clevenger attempted to stop Wiley, but Wiley turned and walked away; (3) Wiley began cursing at Clevenger; (4) Clevenger and Skaggs gave Wiley multiple orders to turn around and cuff up; (6) Wiley continued to curse at staff; (5) Clevenger deployed a burst of OC spray to Wiley's face; (7) Clevenger ordered Wiley to stop and "cuff up" three additional times; (8) Bailey unholstered his taser; and (9) Clevenger ordered Bailey to deploy a shot from his taser. [R. 1-1 at pg. 1]. Further, Bailey knew that Wiley made threatening statements to Barker prior to throwing his medication in the air. [R. 1-1 at pg. 9]. Upon Wiley's failure to comply with the officers' orders to stop and "cuff up," and further refusal to comply after being sprayed with OC spray, Bailey used a taser to gain his compliance.

Wiley does not assert any facts showing that Bailey maliciously intended to cause Wiley harm, rather than solely intending to gain his compliance. As the Sixth Circuit previously held, "it is not unreasonable for the jail officials to conclude that the use of a stun gun is less dangerous for all involved than a hand-to-hand confrontation." *Caldwell v. Moore,* 968 F.2d 595, 602 (6th Cir. 1992). Because Wiley did not comply with various verbal orders, continued to refuse to obey orders after being sprayed with OC spray, Bailey used the taser to induce Wiley to comply with orders. Wiley also does not assert facts showing that Skaggs and Curry maliciously intended to cause Wiley harm when they restrained him on the ground and placed him in mechanical cuffs. Furthermore, the need for Curry and Skaggs to restrain Wiley upon being tased supports the notion that the Defendants were attempting to maintain and restore discipline.

While Wiley asserts that a nurse was not "on the scene" to determine if Wiley suffered injuries, a report from Nurse Dianna Cade shows that she removed taser probes from Wiley's back at around 1:45 pm on the date of the incident. [R. 1-1 at pg. 5]. The report states that Wiley refused to have his vitals taken, "after getting agitated at nurse," and was "cleared from medical." [*Id.*]. Cade instructed Wiley to follow up with medical for worsening symptoms. [*Id.*]. However, Wiley does not assert any injury that occurred because of the use of the taser.

### V. Green

Wiley asserts that Warden Green "knows about the illegal excessive use of force that was used against Mr. Wiley and failed to correct the issue." [R. 1 at pg. 4]. According to Wiley, "[t]he institutional Warden failed to dismiss [his] disciplinary report from the files and failed to fire his officers and staff for this incident and illegal excessive use of force that was conducted against Mr. Wiley with the tasergun and OC spray." [*Id.* at pg. 5]. However, because Wiley does not allege that Green had personal involvement in the events described above, Green cannot be held liable.

Personal liability in an action brought pursuant to 42 U.S.C. § 1983 hinges upon the defendant official's personal involvement in the deprivation of the plaintiff's civil rights. *Nwaebo v. Hawk-Sawyer,* 83 F. App'x 85, 86 (6th Cir. 2003). Wiley did not present evidence that Green was directly involved in the incident described above. Further, to allege that an official is personally liable as a supervisor, Plaintiffs must show that the official "impliedly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays v. Jefferson Cnty., Ky.,* 668 F.2d 869, 874 (6th Cir. 1982)). Wiley does not present any facts pertaining to how Green knew of the conduct or authorized it and, without more, Wiley fails to establish that Green impliedly authorized, approved, or knowingly acquiesced in any conduct taken by Defendants.

## VI.

Lastly, Wiley states that he was "denied the tools of discovery," however Wiley did not serve any discovery requests to Defendants. [R. 50 at pg. 2]. Wiley claims that he could not participate in discovery because he was in disciplinary segregation, however, as the Defendants acknowledge, Wiley filed various motions with the court during this time—none of which addressed serving Defendants with requests for discovery. Further, the Court denied Wiley's various requests to appoint counsel in this matter because there were no exceptional circumstances warranting appointing counsel. Accordingly, for the reasons stated above,

**IT IS RECOMMENDED THAT** Defendants Clevenger, Bailey, Skaggs, Curry, and Green's motion for summary judgment, [R. 47], be GRANTED.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must

be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed August 7, 2024.



Signed By:
*Edward B. Atkins*　 ЄBA
United States Magistrate Judge